IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRYL BARRETT                           )
                                         )      Civil Action No. 08 - 117J
                        Petitioner,      )
                                         )      Magistrate Judge Lisa Pupo Lenihan
v.                                       )
                                         )
RANDALL E. BRITTON, *Supt. at SCI*       )
*Houtzdale*; PENNSYLVANIA BOARD          )
OF PROBATION AND PAROLE,                 )
                                         )
                        Respondents.     )

## MEMORANDUM OPINION AND ORDER

Petitioner, Darryl Barrett, is a state prisoner incarcerated at the State Correctional

Institution at Greensburg.  Petitioner challenges the decision by the Pennsylvania Board of Probation

and Parole to deny him parole on September 13, 2006.  Specifically, Petitioner asserts that the Board's

denials violate the *Ex Post Facto* Clause of the United States Constitution in that the Board made the

protection of the public its pre-eminent consideration in denying parole.  In this respect, Petitioner

relies upon the analysis set forth in Mickens-Thomas v. Vaughn, 321 F.3d 374 (3d Cir.) ("Mickens-

Thomas I"), *cert. denied sub. nom.* Gillis v. Hollawell, 540 U.S. 875 (2003).  In Petitioner's view,

Mickens-Thomas requires that he be released from custody due to the Board's improper reliance on

the "new" factors introduced by the 1996 amendment to Pennsylvania's parole statute.  For the reasons

set forth below, the Petition will be denied.

### A. Relevant Facts and Procedural History

In January of 1993, following a jury trial in the Court of Common Pleas of Chester

County, Petitioner was sentenced to a term of incarceration of from eleven (11) to twenty-two (22)

years for his convictions of attempted rape, burglary, criminal trespass, theft by unlawful taking or

disposition, receiving stolen property, simple assault, terroristic threats, robbery, reckless

endangerment, indecent assault, indecent exposure and aggravated assault.  His minimum sentence

expired on November 22, 2001 and his maximum sentence expires on November 22, 2012.

   At issue in the instant Petition is the Board's denial of Barrett's application for parole as

recorded on September 13, 2006, which provides as follows.

> AS RECORDED ON SEPTEMBER 13, 2006, THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:
>
> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED.  THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME.  THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING.
>
> YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> YOUR REFUSAL TO ACCEPT RESPONSIBILITY FOR THE OFFENSE(S) COMMITTED.
>
> YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE PROSECUTING ATTORNEY.
>
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
>
> YOUR UNACCEPTABLE COMPLIANCE WITH PRESCRIBED INSTITUTIONAL PROGRAMS.

YOUR NEED TO PARTICIPATE AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.

YOUR FAILURE TO DEVELOP AN APPROVED RELEASE PLAN.

YOUR INTERVIEW WITH THE HEARING EXAMINER AND/OR BOARD MEMBER.

YOU WILL SERVE YOUR UNEXPIRED MAXIMUM SENTENCE, 11/22/2012, OR BE REVIEWED EARLIER, IF RECOMMENDED BY DEPARTMENT OF CORRECTIONS/COUNTY PRISON STAFF DUE TO APPROPRIATE ADJUSTMENT AND PROGRAM COMPLETION.

Exhibit C, doc. no. 7.

## B. Exhaustion Requirement

The habeas corpus statute at 28 U.S.C. § 2254(b) requires a state prisoner to exhaust available state court remedies before seeking federal relief.  This exhaustion requirement serves to protect the interest of comity, which ensures that the state courts have the first opportunity to address and correct violations of state prisoners' federal rights.  Rose v. Lundy, 455 U.S. 509, 518 (1982); Preiser v. Rodriguez, 411 U.S. 475, 491 (1973).  Accordingly, before a federal court addresses the merits of a state prisoner's claims, constitutional and federal law issues first must have been fairly presented to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review.  *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  The petitioner has the burden of establishing that exhaustion has been met.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).  Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to

exhaustion when no appropriate state remedy exists.  <u>Christy v. Horn</u>, 115 F.3d 201, 206 (1997); <u>Doctor</u>, 96 F.3d at 681; <u>Carter v. Vaughn</u>, 62 F.3d 591, 594 (3d Cir. 1995).

In this action, Barrett exhausted his claims by presenting them to the Commonwealth Court of Pennsylvania and the Supreme Court of Pennsylvania.  *See* Exhibits D-K, doc. no. 7.  Thus, the Court will review the merits of his claims.

### C. Petitioner's Ex Post Facto Claim

Petitioner claims that the Board's actions in denying his application for parole violated the Ex Post Facto Clause of the United States Constitution.  U.S. Const. Art. 1, § 10.  The Supreme Court repeatedly has reiterated that "[t]o fall within the ex post facto prohibition, a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime."  <u>Lynce v. Mathis</u>, 519 U.S. 433, 441 (1997) (internal citation and quotation omitted).

In analyzing whether a law violates the ex post facto clause, the courts are required to determine whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  <u>California Dep't of Corrections v. Morales</u>, 514 U.S. 499, 509 (1995).  In <u>Morales</u>, the Supreme Court reviewed an ex post facto challenge to a California law that allowed the Parole Board, after holding an initial parole hearing, to defer for up to three years subsequent parole suitability hearings for prisoners convicted of multiple murders if the Board found that it was unreasonable to expect that parole would be granted.  In analyzing the issue, the Court declined to adopt a single formula to identify ex post facto laws; instead, it developed a test in which it inquired whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Id*. at 509.  The Court specifically disagreed with the contention that

any risk of enhanced confinement associated with an original offense was barred, stating "[o]ur cases have never accepted this expansive view of the Ex Post Facto Clause, and we will not endorse it here." *Id*. at 508.   Employing the sufficient risk test, the Court upheld California's amendments as constitutional because they "create[d] only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause."  *Id*. at 509 (citing Dobbert v. Florida, 432 U.S. 282, 294 (1977)).

In Garner v. Jones, 529 U.S. 244 (2000), the Supreme Court applied the sufficient risk test to an ex post facto challenge to an amendment of a Georgia regulation that allowed the parole board to defer parole review consideration from three years to as long as eight years for inmates convicted of multiple offenses.  Employing the sufficient risk test set forth in Morales, the Supreme Court found that this rule change was not invalid on its face because the parole board retained discretion as to how often to set an inmate's date for reconsideration, with eight years being the maximum.  Further, the Georgia rules permitted expedited parole reviews to consider a change in circumstances or new information.  Jones, 529 U.S. at 254.  Notwithstanding, the Supreme Court held that, while the rule at issue did not by its own terms show a significant risk, the burden was on the parole applicant to demonstrate, "by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule."  *Id*. at 255.  The Court remanded the case for consideration of whether the amendment created a significant risk of increasing petitioner's punishment as applied.  *Id*. at 257.

Thus, in order to show that he is entitled to relief in this action, petitioner must show that that the Board's decisions denying his applications were dictated by a change in the Pennsylvania parole laws that, on their face or as applied to him, created a significant risk of increasing the severity of his punishment.  For the reasons that follow, Petitioner has not met this burden.

In this regard, Petitioner alleges that the Board violated the Ex Post Facto Clause by applying the amended parole guidelines and 1996 amended parole statute, 61 Pa. Stat. § 331.1, both of which were not in effect at the time he was sentenced.  When petitioner committed his crime, the relevant 1941 parole statute, 61 Pa. Stat. § 331.1, provided as follows.

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Act 1941, Aug. 6, P.L. 861 § 1 (West 1995).

In 1995, the Board's parole procedures became the subject of strict scrutiny after several violent criminals previously released on parole by the Board were charged with committing serious violent offenses.  One of these criminals, Robert "Mudman" Simon, shot and killed a New Jersey Police Officer during a routine traffic stop three months after his release.  These events precipitated an intense investigation of Pennsylvania's parole system by the Senate Judiciary Committee of the Pennsylvania General Assembly, who reported the results of the investigation to the Governor.  *See* Stewart v. Pennsylvania Board of Probation and Parole, 714 A.2d 502, 504, n.1 (citing Chairman's Report:  Investigation into the Parole of Robert Simon, Senate of Pennsylvania

Judiciary Committee, 179th Gen. Assembly 1995 Sess. 1-6 (February 1996)).  As a result of this investigation, the Judiciary Committee made recommendations that the emphasis of Pennsylvania's parole philosophy should be changed from prisoner rehabilitation to the protection of public safety, deterrence of crime and incapacitation of criminals.  *Id*.

In 1995 and again in 1996, the Parole Act was amended to implement the suggested changes in parole policy for violent offenders.  Section 1 of the Parole Act, 61 P.S. § 331.1, was amended as follows.

> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public.  In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders.

Amended Dec. 18, 1996, P.L. 1098, No. 164, § 1.

Petitioner argues that the 1996 amendments shifted the policy statement of the Board from one that recognized the "value of parole as a disciplinary and corrective influence and process" to one that emphasized the protection of public safety as the predominant concern in granting parole. He claims that he is entitled to habeas corpus relief based in the decision by the Court of Appeals for the Third Circuit in Mickens-Thomas v. Vaughn, et al., 321 F.3d 374 (3rd Cir. 2003) wherein the Court reviewed the 1995 and 1996 amendments to the Pennsylvania Parole Act in response to a challenge that their application violated the *ex post facto* clause.

In Mickens-Thomas, the Third Circuit Court held that the Board's application of the changes made to the Pennsylvania Parole Act in deciding parole applications violated the *ex post facto* clause of the United States Constitution.  Specifically, the court found that, although risks to public safety in granting parole always had been a consideration in the decisional process, after 1996,

the Board "clearly viewed its statutory mandate to require special emphasis on public safety." *Id.* at 385.

Notwithstanding, in its opinion, the Court of Appeals specifically recognized the applicability of the Pennsylvania Supreme Court plurality decision in <u>Winklespecht v. Bd. of Probation and Parole</u>, 571 Pa. 685, 813 A.2d 688 (2002). In that decision, the Pennsylvania Supreme Court, the final arbiter of the meaning of Pennsylvania law,[1] determined that the 1996 amendments to the parole statute had not worked any substantive change in the parole statute or standards for the Board. As such, the Pennsylvania Supreme Court held that the statutory changes made to the Parole Act in 1995 and 1996 did <u>not</u> violate the Ex Post Facto Clause.

> The rewording of 61 P.S. § 331.1 did not create a substantial risk that parole would be denied any more frequently than under the previous wording, nor did the addition of this language create a new offense or increase the penalty for an existing offense. Although the language concerning "protect[ing] the safety of the public" and "assist[ing] in the fair administration of justice" was added to § 331.1 in 1996, these concepts are nothing new to the parole process and have always been underlying concerns. Both versions of § 331.1 leave the decision regarding the grant of parole within the discretion of the Board; the fact that some language was added in 1996, which clarified the policy underlying the parole process, does nothing that increases Winklespecht's punishment. Reordering of considerations for necessary decisions within an unchanged penalty do not rise to an ex post facto violation.

<u>Winklespecht</u>, 813 A.2d at 691-2.[2]

---

1. <u>Gruber v. Owens-Illinois Inc.</u>, 899 F.2d 1366, 1369 (3d Cir. 1990)("In interpreting state statutes, decisions of the state's highest court are binding upon us. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967)").

2. In <u>Finnegan v. Pennsylvania Bd. of Probation and Parole</u>, 838 A.2d 684 (Pa. 2003), a clear majority of the Supreme Court of Pennsylvania re-affirmed the holding of <u>Winklespecht</u> in response to a mandamus action filed in the Commonwealth Court of Pennsylvania.

In Mickens-Thomas, the Court of Appeals determined that the Winklespecht decision, "made after the Board's actions on Thomas's parole, came too late to alter the Board's view of the statutory amendment on the outcome of this case.  Not having the benefit of the Supreme Court decision, the evidence before us shows that the Board interpreted § 331.1 to mandate foremost the consideration of public safety.  The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function."  Mickens-Thomas, 321 F.3d at 391.

Respondent asserts that petitioner is not entitled to habeas corpus relief because his most recent parole denial is dated September 2006, well after the December 31, 2002 decision in Winklespecht.  Specifically, Respondent claims that, because the Board did have the benefit of the Winklespecht decision at the time of his parole evaluation in September of 2006, there is no basis upon which to grant habeas corpus relief as there is no indication that his parole was denied solely on the basis of the Board's mandate to protect the public health and safety.

In this regard, the Court agrees that the narrow holding of Mickens-Thomas I is that the Board's interpretations of the 1996 statutory amendments violated the ex post facto clause, not the 1996 Amendments themselves, because Mickens-Thomas had established a substantial likelihood of an increase in the period of his incarceration due to the 1996 parole policy changes.

Hence, to the extent Petitioner's present challenge is directed at the 1996 statutory amendments themselves, he fails to state a claim under the ex post facto clause because those 1996 amendments wrought no change in the law.  Winklespecht.  See also Hall v. Pennsylvania Board of Probation and Parole, 578 Pa. 245, 851 A.2d 859 (2004); Finnegan v. Pennsylvania Bd. of Probation and Parole, 838 A.2d 684 (Pa. 2003).  Thus, the question at bar is whether Petitioner can demonstrate that the 1996 amendments established a substantial likelihood of an increase in the period of his

incarceration such that would violate the Ex Post Facto Clause. *See, e.g.*, <u>Richardson v. Pennsylvania Bd. of Probation and Parole</u>, 423 F.3d 282, 287-88 (3d Cir.2005) ("To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a 'sufficient risk of increasing the measure of punishment attached to the covered crimes'…'a speculative and attenuated possibility of …increasing the measure of punishment' is not enough."); <u>Pleaze v. Klem</u>, 335 Fed. Appx. 168, 170 (3d Cir. 2009).

In making this determination, this Court must review the Board decision of September 13, 2006.  This determination specifically provides the factors the Board considered in its decision denying petitioner parole; namely, Petitioner's refusal to accept responsibility for the offenses he committed; his lack of remorse; the unfavorable recommendation by the prosecuting attorney and the DOC; his unacceptable compliance with prescribed institutional programs, his failure to develop an approved release plan and his interview with the hearing examiner.  Importantly, these factors indicate that the public safety factor was only one of many important factors considered by the Board in denying his parole application.  There simply is no indication in the Board's decision that it applied the public safety factor as the determinative factor such as would violate the Ex Post Facto Clause.  Thus, there is no indication that the Board's action in denying Petitioner parole was the result of an illegal application of the Pennsylvania Parole laws.

Importantly, in reviewing parole decisions made by the Board after December 31, 2002, this Court must respect the decisions of the Pennsylvania Supreme Court in <u>Winklespecht</u> and <u>Finnegan</u> wherein the Court determined that the 1995 and 1996 changes to the Pennsylvania Parole Act <u>did not</u> affect the way in which parole decisions were to be made and, therefore, did not violate the Ex Post Facto Clause.  Unless the record shows otherwise, this Court must presume that the

Board correctly is applying the law as set forth by the Supreme Court of Pennsylvania.  *See* Davis v. Pennsylvania Board of Probation and Parole, Civil Action No. 03-3997 (E.D. Pa. 2004) (holding that parole decision postdating Winklespecht did not raise a viable ex post facto claim).

The record in this case shows that the Commonwealth Court found as follows in regards to Petitioner's claim.

> Although retroactive changes in the laws governing parole may violate the *ex post facto* clause, a change in parole rules will only violate the *ex post facto* clause if the amended rule creates a significant risk of prolonging an inmate's incarceration.  However, a speculative possibility of increasing punishment does not establish a violation of the *ex post facto* clause.  Rather, to advance a proper *ex post facto* claim based on application of the post-amended Act, an inmate "must present some facts showing that the result of this change in policy, by its own terms, demonstrates a significant risk of prolonging the inmate's term of incarceration, or that it negatively impacts the chance the inmate has to be release on parole….
>
> Although Barrett alleges that he would have been "guaranteed" some sort of parole but for the Board's application of the 1996 amendment and its policy ensuring public safety, no such guarantee ever existed – parole has always been granted at the discretion of the Board.  Moreover, nowhere in the September 13, 2006 Notice of Board Decision did the Board indicate that Barrett's parole was being denied on the grounds of public safety.  Instead, in the notice, the Board set forth nine explanations, corresponding to considerations set forth in Section 19 of the Act, as to why he was denied parole.  These reasons why he was not suitable for parole would have been the same regardless of whether the pre-amended or 1996 amendment was used by the Board.

Exhibit H - Memorandum Opinion by Judge Pellegrini (citations omitted) (doc. no. 7-4, pp. 46-55).

It is important to remember that the granting of parole prior to the expiration of a prisoner's maximum term is not a constitutionally-protected liberty interest that is inherent in the Due Process Clause.  Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).  In this regard, the Pennsylvania Probation and Parole Act, 61 Pa. Stat. 331.1, *et. seq.*, does

not grant Pennsylvania state prisoners any constitutionally-protected liberty interest arising under state law in being released on parole prior to the expiration of their maximum terms.[3]  Pennsylvania law unambiguously provides that a prisoner is not entitled to release from prison until the expiration of his maximum sentence.[4]  Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term.  The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole.  Although a prisoner is eligible for parole at the end of his minimum term, nothing in Pennsylvania law or the United States Constitution requires a prisoner to be released at such time.[5]

Notwithstanding, several courts, including the Court of Appeals for the Third Circuit, recognize that, even though an inmate has no protectable liberty interest in parole that implicates

---

3.  *See, e.g.*, McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Mickens-Thomas v. Commonwealth, Bd.. of Probation and Parole, 699 A.2d 792 (Pa. Commw. Ct. 1997) (parole is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd.. of Probation and Parole, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), *appeal denied*, 637 A.2d 295 (Pa. 1993).

4.  A prisoner's sentence is his maximum term.  Krantz v. Pennsylvania Bd. of Probation & Parole, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984).  The significance of the minimum sentence is that it establishes a parole eligibility date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board.  *Id*.

5The existence of a state parole system alone does not create a constitutionally-protected interest.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

procedural due process, his substantive due process rights may be violated if parole is denied by arbitrary government action.[6]  In this regard, the constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them.[7]  Some courts have determined that decisions to grant or deny parole may violate a prisoner's right to substantive due process if such decisions are based on arbitrary and capricious factors.  The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the substantive component of the Due Process Clause.  Nonetheless, the Court has clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

The Board's specified reasons for denying the Petitioner's parole application are, on the face of them, in accordance with its statutory directive as set forth in the Parole Act and as explained by the Supreme Court of Pennsylvania in Winklespecht and Finnegan.  In granting parole, the Board is required to consider the nature and character of the offense committed, the general character and history of the prisoner, the written or personal statement or testimony of the victim or victim's family, and the recommendations of the trial judge, the district attorney and of each warden

---

6See, e.g., Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991); Newell v. Brown, 981 F.2d 880, 886 (6th Cir. 1992), cert. denied, 510 U.S. 842 (1993); Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980); Carter v. Kane, 938 F. Supp. 282 (E.D. Pa. 1996).

7See also Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

or superintendent who has had control over the applicant.  61 Pa. Stat. § 331.19.  Moreover, the

Board is prohibited from granting parole unless the Commonwealth will not be injured thereby.  *See*

61 Pa. Stat. § 331.21(a).

        In reviewing the Board's exercise of discretion in denying an application for parole,

this Court's only role "is to insure that the Board followed criteria appropriate, rational and consistent

with the statute and that its decision is not arbitrary and capricious nor based on impermissible

considerations."  Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980).  The Board identified legitimate

reasons for exercising its discretion in denying petitioner's applications for early release from prison.

The Board's reasons for denying his parole application are, on the face of them, in accordance with

its statutory mandate to protect the well being of the Commonwealth's citizens.  Without a doubt, the

safety of the public and the interests of the Commonwealth are injured by releasing prisoners who

require additional treatment programs or other types of counseling and who do not have a favorable

recommendation from their custodians.  Petitioner does not allege that he was denied parole based

on unconstitutional criteria such as race, religion or retaliation.  Nothing in the record before this

court suggests that the Board exercised its discretion in either an arbitrary or capricious manner.

As such, petitioner has failed to demonstrate that he is entitled to habeas corpus relief under the

substantive prong of the Due Process Clause.  *Accord* Banks v. Pennsylvania Bd. of Probation and

Parole, 2004 WL 906296, at *4 (E. D. Pa. April 28, 2004) ("[T]he Board's decision that Petitioner

may require continued participation in a prescriptive program does not constitute an arbitrary or

capricious decision."); Shaffer v. Meyers, 338 F.Supp.2d 562, 566 (M.D. Pa. 2004) ("On the basis

of the record before the court, and the stated reasons for the Parole Board's denial of parole, the court

concludes that there was a rational basis for the denial of parole."); Cohen v. Pennsylvania Bd of

Probation and Parole, 1998 WL 834101 (E.D. Pa. Dec. 2, 1998) (holding that the denial of parole despite recommendation from prison psychiatrist does not state a violation of substantive due process).

Having failed to show on this record that the Board's most recent denial of his parole violated his ex post facto rights or his rights under the substantive prong of the Due Process Clause, Petitioner is not entitled to any relief.  An appropriate order follows.

### D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions.  Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability (COA) has been issued.  A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).  Applying this standard to the instant case, the court concludes that Petitioner has failed to demonstrate any violation of his constitutional rights.  Accordingly, a certificate of appealability will be denied.

AND NOW, this 8th day of January, 2010;

IT IS HEREBY ORDERED that Petitioner's Petition is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court mark this case CLOSED.

AND IT IS FURTHER ORDERED that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

cc:    Darryl Barrett
       CA-0080
       SCI Houtzdale
       P.O. Box 1000
       Houtzdale, PA 16698